**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

In re:

JOSEPH J. MENDINGHALL, JR.

            Debtor.

-----------------------------------------------------------------x

Chapter 13

Case No. 24-35112 (KYP)

**MEMORANDUM DECISION DISMISSING CHAPTER 13**
**BANKRUPTCY CASE, BUT RETAINING JURISDICTION**
**OVER ADVERSARY PROCEEDING**

**APPEARANCES:**

CHAPTER 13 STANDING TRUSTEE
399 Knollwood Road, Suite 102
White Plains, NY 10603
By:     Thomas C. Frost, Esq.
              Of Counsel

LEGAL SERVICES OF THE HUDSON VALLEY
*Attorneys for the Debtor*
1 Park Place, Suite 202
Peekskill, NY 10566
By:     Tanya Dwyer, Esq.
              Of Counsel

CARLOS J. CUEVAS, ESQ.
*Attorney for Charles Tran Property, LLC*
1250 Central Park Avenue
Yonkers, NY 10704

PHILLIPS LYTLE LLP
*Attorneys for Cheswold (TL), LLC*
620 Eighth Avenue, 38th Floor
New York, NY 10018
By:     Nickolas Karavolas, Esq.
              Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

In April 2023, real property located at 14 Amchir Avenue, Middletown, New York ("Property") owned by Joseph J. Mendinghall, Jr. ("Debtor") was sold in a tax foreclosure auction to Charles Tran Property, LLC ("CTP").  In the years that followed, the Debtor engaged in extensive efforts to reverse the foreclosure sale and stay a related eviction proceeding commenced by CTP, including by filing a bankruptcy petition.

Thomas C. Frost ("Trustee"), the Chapter 13 standing trustee, has now moved for dismissal of this bankruptcy case ("Dismissal Motion").[1]  The Dismissal Motion is supported by CTP ("CTP Joinder")[2] and Cheswold (TL), LLC ("Cheswold") ("Cheswold Joinder").[3]  For the reasons set forth herein, the Debtor's bankruptcy case is DISMISSED because it was filed and maintained in bad faith.  However, the Court will leave open, and retain jurisdiction over, the adversary proceeding captioned *Mendinghall v. City of Middletown, et al.*, Adv. P. No. 24-09021 (KYP) ("Adversary Proceeding").

## PROCEDURAL BACKGROUND

### A.    The Foreclosure and Eviction Actions

The circumstances surrounding the foreclosure of the Property and the corresponding eviction proceeding were described by this Court in its April 10, 2025

---

[1]    *See Application*, dated July 22, 2025 (ECF Doc. # 209).  "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case.  "ECF Adversary Proceeding Doc. # _" refers to documents filed on the electronic docket of the Adversary Proceeding (defined below).  "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2]    *See Statement of Charles Tran Property LLC in Support of the Chapter 13 Trustee's Motion to Dismiss Chapter 13 Case*, dated July 25, 2025 (ECF Doc. # 211).

[3]    *See Joinder of Cheswold (TL), LLC to and Statement in Support of Chapter 13 Trustee's Motion to Dismiss Case*, dated Aug. 12, 2025 (ECF Doc. # 216).

bench ruling dismissing the claims asserted in the Debtor's amended complaint in the Adversary Proceeding.  (*See Transcript of April 10, 2025 Hearing* ("4/10/25 Tr.") (ECF Adversary Proceeding Doc. # 54).)  The Court assumes familiarity therewith and recounts the facts necessary for the disposition of the instant Dismissal Motion.

On October 16, 2020, Cheswold, as assignee of tax liens from the City of Middletown ("City"), commenced an action against the Debtor in the Supreme Court of the State of New York, County of Orange ("State Court"), captioned *Cheswold (TL), LLC v. Mendinghall, et al.*, Index No. EF005970-2020 ("Foreclosure Action") to foreclose on the Property for unpaid taxes.  The Debtor failed to answer the complaint, and a foreclosure judgment ("Foreclosure Judgment") was entered against the Debtor on February 3, 2023.  In his July 21, 2023 State-Court filing, the court-appointed referee reported that the Property had been sold at an April 13, 2023 auction and that he had delivered a deed of conveyance for the Property to CTP.

On August 28, 2023, CTP commenced an action against the Debtor in the City Court of the State of New York, City of Middletown, captioned *Charles Tran Property, LLC v. Mendinghall*, Index No. LT-701-23 ("Eviction Action") to remove the Debtor from the Property.  The Eviction Action was stayed by the Debtor's bankruptcy filing, and CTP moved for relief from the automatic stay on July 22, 2024.  (ECF Doc. # 65 (motion for relief from stay).)  At the April 10, 2025 hearing, the Court and the parties agreed to adjourn CTP's motion for relief from stay *sine die* pending resolution of the Adversary Proceeding.  (ECF Doc. # 173 (notice of adjournment).)  But on October 27, 2025, counsel to CTP requested an emergency hearing on the motion for relief from stay because the Debtor had vacated the Property, the electric meter had been turned off, the gas meter was locked, and an odor was emanating from the Property.  (ECF Doc. ##

3

222, 225.) The Court held the emergency hearing on October 30, 2025 and entered an order the following day (i) granting CTP relief from the automatic stay to continue the Eviction Action, and (ii) authorizing the City to take necessary action concerning the Property to protect public health and safety. (ECF Doc. # 226.)

**B.      The Bankruptcy Filing and Litigation in the Foreclosure Action**

On February 6, 2024, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, and Marianne O'Toole was appointed Chapter 7 trustee. On April 3, 2024, the Chapter 7 trustee moved in the Foreclosure Action to vacate the Foreclosure Judgment on the basis that (i) the Debtor was not properly served with the summons and complaint, and (ii) the foreclosure and sale constituted an unconstitutional taking and excessive fine in violation of the Fifth and Eighth Amendments to the United States Constitution. By decision dated April 23, 2024, the State Court denied the Chapter 7 trustee's motion.

Following the State Court's denial of her motion, the Chapter 7 trustee abandoned the Property in the bankruptcy case stating that "the Property is of inconsequential value and benefit to the Debtor's estate, above the exemptions asserted by the Debtor . . . ." (ECF Doc. # 38.) On May 6, 2024, the Debtor moved to convert his bankruptcy case to one under Chapter 13 of the Bankruptcy Code, and the Court granted the motion. (ECF Doc. # 49.)

On May 23, 2024, the Debtor moved in the Foreclosure Action for renewal and re-argument of the motion to vacate the Foreclosure Judgment, and the State Court denied the Debtor's motion by decision dated June 17, 2024.

**C.      The Adversary Proceeding**

On August 7, 2024, the Debtor commenced the Adversary Proceeding in this Court against CTP, Cheswold, and the City.  In his amended complaint filed on September 30, 2024, the Debtor asserted that the foreclosure and sale constituted an unconstitutional taking and excessive fine in violation of the United States and New York Constitutions (collectively, the "Constitutional Claims").  The amended complaint also included bankruptcy claims including a turnover claim under 11 U.S.C. § 542, a preference claim under 11 U.S.C. § 547, an intentional fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A), and a constructive fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(B) (collectively, the "Bankruptcy Claims").  At the April 10, 2025 hearing, the Court issued a bench ruling dismissing all the Debtor's claims in the amended complaint.  The Court ruled that the Constitutional Claims were barred under the doctrine of *res judicata* based on the prior rulings of the State Court in the Foreclosure Action (4/10/25 Tr. at 13:17-15:15) and dismissed the Bankruptcy Claims for failure to state a claim.  (*Id.* at 17:3-19:18.)  However, the Court granted the Debtor's request to file a further amended complaint, but only to assert a constructive fraudulent transfer claim.  (*Id.* at 19:19-21:14.)  On April 15, 2025, the Court an entered order consistent with its bench ruling ("Order Dismissing Amended Complaint").[4]

The Debtor subsequently took two simultaneous tracks: (i) he filed a *Second Amended Complaint* on May 9, 2025 ("Second Amended Complaint") (ECF Adversary Proceeding Doc. # 57) containing a single constructive fraudulent transfer cause of

---

[4]      *See Order Dismissing Amended Complaint and Granting Plaintiff's Cross Motion to File Second Amended Complaint With a Single Count for a Constructive Fraudulent Conveyance*, signed on Apr. 14, 2025 (ECF Adversary Proceeding Doc. # 53).

action as permitted under the Order Dismissing Amended Complaint, and (ii) he filed a

*Notice of Appeal* on April 29, 2025 (ECF Adversary Proceeding Doc. # 55) from the

Order Dismissing Amended Complaint.

The appeal to the United States District Court for the Southern District of New

York ("District Court") was assigned case number 7:25-cv-04898-KMK ("District Court

Appeal").  CTP moved to dismiss the District Court Appeal on the basis that the Order

Dismissing Amended Complaint was not a final appealable order because it granted the

Debtor leave to file a further amended complaint.  The Debtor objected to the motion to

dismiss his appeal, and the matter is now fully briefed and remains *sub judice* with the

District Court.  (ECF District Court Appeal Doc. ## 16, 17, 23, 27, 28, 29, 30, 31, 32, and

33.)

Meanwhile, CTP moved in this Court to dismiss the Second Amended Complaint

on May 26, 2025.  The Debtor objected to that motion, and the Court heard oral

argument on September 23, 2025.  (ECF Adversary Proceeding Doc. ## 66, 75, 78, 79,

87, and 92.)  At that hearing, the Court stated that it would not rule on the motion to

dismiss the Second Amended Complaint until the District Court Appeal was resolved.

**D.     The Instant Dismissal Motion**

In the two years that this bankruptcy case has been pending, much of the

litigation before this Court concerned the Debtor's efforts to attack the Foreclosure

Judgment, reverse the foreclosure sale, and stay the Eviction Action.  The Trustee's

Dismissal Motion shifts the focus back to a matter of fundamental importance in all

bankruptcy cases: whether there is a legitimate *bankruptcy* purpose to the Debtor's

Chapter 13 case.  According to the Trustee, this bankruptcy case should be dismissed

because the Debtor is solvent, the Debtor's bankruptcy schedules contain inaccuracies,

6

the Debtor has only one creditor to pay under a Chapter 13 plan, and the Debtor has failed to provide the Trustee with copies of his 2024 federal tax returns. (*See* Dismissal Motion.) CTP and Cheswold support dismissal of the case. (*See* CTP Joinder and Cheswold Joinder.)[5] The Court heard oral argument on September 23, 2025 and took the matter under advisement.[6]

## **DISCUSSION**

### A.      **Applicable Legal Standards**

Section 1307(c) of the Bankruptcy Code provides that, "on request of a party in interest . . . and after notice and a hearing, the court . . . may dismiss a [Chapter 13 bankruptcy case] . . . for cause . . . ." 11 U.S.C. § 1307(c). Subsection (c) identifies eleven separate circumstances warranting dismissal, *see* 11 U.S.C. § 1307(c)(1) – (11), but that list is not exhaustive. *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013). "Although bad faith is not expressly enumerated in the statute, it is well established that lack of good faith may also be cause for conversion or dismissal under § 1307(c)." *Froman v. Fein* (*In re Froman*), 566 B.R. 641, 647 (S.D.N.Y. 2017) (quotation omitted).

"Evaluation of whether a debtor had bad faith in filing and maintaining a Chapter 13 case requires a careful examination of the totality of the circumstances on a case-by-case basis." *Mongiello v. HSBC Bank USA NA* (*In re Mongiello*), Nos. 24-CV-2468 & 24-CV-2548 (KMK), 2025 WL 959174, at *4 (S.D.N.Y. Mar. 31, 2025) (citation and

---

[5]      CTP had previously moved to dismiss the bankruptcy case (ECF Doc. # 94), but that motion was adjourned *sine die* pending resolution of the Adversary Proceeding (ECF Doc. # 173).

[6]      At this hearing, the Court asked the parties about their views on whether this Court may rule on the Dismissal Motion while the District Court Appeal was pending. Counsel to CTP responded that this Court may rule on the Dismissal Motion, and counsel to the Debtor stated that she could not think of any reason why this Court could not rule on the Dismissal Motion.

internal quotation marks omitted). Bad faith may be found "where there is evidence of an intent to delay or frustrate the efforts of secured creditors to enforce their legitimate rights." *Froman*, 566 B.R. at 647 (quoting *In re Northtown Realty Co., L.P.*, 215 B.R. 906, 914 (Bankr. E.D.N.Y. 1998)). The Court may consider the following factors when analyzing a Chapter 13 debtor's bad faith:

- the debtor has few or no unsecured creditors;

- the debtor has previously filed for bankruptcy;

- the debtor's pre-petition conduct was improper;

- the debtor's petition allows him or her to evade court orders;

- the debtor has few debts to non-moving creditors;

- the petition was filed on the eve of foreclosure;

- the foreclosed property was the sole or major asset of the debtor;

- no possibility exists for reorganization;

- the debtor's income is insufficient to operate;

- there is no pressure from non-moving creditors;

- reorganization essentially involves the resolution of a two-party dispute;

- the debtor filed solely to obtain an automatic stay;

- the petition contains deficiencies or inaccuracies meant to mislead the court;

- payments are fundamentally fair in timing and amount;

- debtor had an improper motive in seeking relief; and

- under the totality of the circumstances, the debtor has abused the provisions, purposes, and/or spirit of Chapter 13.

*Worth v. Frost* (*In re Worth*), No. 23-CV-3182 (CS), 2024 WL 776084, at *4 (S.D.N.Y. Feb. 26, 2024) (quoting *Plagakis v. Gelberg* (*In re Plagakis*), No. 03 CV 0728(SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004)).  Related to the final factor listed above, granting a bankruptcy discharge to a debtor that is not in financial distress runs counter to the underlying purpose of Chapter 13.  *See Chase Manhattan Mortg. Corp. v. Rodriguez* (*In re Rodriguez*), 248 B.R. 16, 19-20 (Bankr. D. Conn. 1999); *id.* at 20-21 ("Congress created Chapter 13 to provide honest, unfortunate debtors with a safe harbor from stormy economic weather.  However, Congress never intended to permit financially stable debtors to sail away from debt they could reasonably repay outside of bankruptcy."); *accord In re Mayfield*, 564 B.R. 627, 633 (Bankr. W.D. Ark. 2017) ("[T]he debtor's overall financial condition is relevant to a determination of his motivation and sincerity in seeking chapter 13 relief."); *see also McHugh v. Lofstedt* (*In re McHugh*), BAP No. CO-24-20, 2025 WL 2779101, at *5 (B.A.P. 10th Cir. Sept. 30, 2025) (noting that "several courts have treated financial distress as an additive factor in the totality of circumstances analysis with a lack of financial distress highlighting an improper purpose for filing").  A finding of bad faith is a "highly factual determination," *In re Brody*, 671 B.R. 34, 40 (Bankr. S.D.N.Y. 2025) (quoting *Lin*, 499 B.R. at 436), and that determination is "left to the sound discretion of the bankruptcy court."  *Id.* at 41 (quoting *In re Ciarcia*, 578 B.R. 495, 500 (Bankr. D. Conn. 2017)).

**B.    Analysis**

**1.    Lack of Creditors and Solvency**

The Debtor is solvent and owes a modest debt to a single unsecured creditor.  A debtor is insolvent if the sum of his liabilities is greater than the sum of his assets, "at a fair valuation, exclusive of property exempted under section 522 or fraudulently

transferred."  2 COLLIER ON BANKRUPTCY ¶ 101.32 (16th ed. 2026); 11 U.S.C. § 101(32)(A).

The Debtor listed sizeable assets in his bankruptcy schedules including (i) a structured

settlement from a state court action with a total value of $313,264, in which $83,833

was payable to the Debtor on March 22, 2024 and $229,431 is payable on March 22,

2029 ("Structured Settlement"), and (ii) a $100,000 judgment for unpaid wages to be

paid by Home First Insurance Co. ("Unpaid Wage Judgment").  (*See Schedule A/B:

Property*, docketed on Sept. 3, 2024 ("Property Schedule") at ECF pp. 12-13 (ECF Doc. #

83).)  The Debtor claimed an exemption for both assets (*see Schedule C: The Property

You Claim as Exempt*, docketed on Sept. 3, 2024 ("Exemption Schedule") at ECF p. 16

(ECF Doc. # 83)), but the Court recently disallowed the Debtor's exemption over the

Unpaid Wage Judgment.  (*See Order (1) Reducing the Exemption Claim Allowed for

Real Property and (2) Denying in its Entirety the Exemption Claim for Unpaid Wages*,

dated Dec. 4, 2025 (ECF Doc. # 229).)  Thus, at minimum, the Debtor's non-exempt

assets for purposes of calculating solvency include the $100,000 Unpaid Wage

Judgment.

When analyzing the Debtor's liabilities, it is important to note that *no creditor

filed a proof of claim* in this bankruptcy case.  Instead, as discussed in the next

subsection, all four proofs of claim filed in this case were filed by the Debtor, and three

of those claims have now been expunged.  The only valid claim that remains is a claim

for $676.37 owed to SUNY Orange Community College ("SUNY Orange") for unpaid

tuition.  (*See* Claim # 1-1.)  SUNY Orange has not appeared in this case[7] nor is there any

---

[7]    SUNY Orange did not even respond to CTP's objection to its proof of claim.  Ultimately, the Court
overruled CTP's objection based on evidence provided by the Debtor.  (*See Order Overruling Objection to
Claim of SUNY Orange Community College*, dated July 21, 2025 (ECF Doc. # 208).)

indication that it has ever exerted any pressure on the Debtor for the repayment of this debt.

To state the obvious, the value of the Debtor's Unpaid Wage Judgment exceeds the debt owed to SUNY Orange, and thus, the Debtor is solvent.  Debtor's counsel has alluded to possible issues in collecting on the Unpaid Wage Judgment at hearings.  Even if the Court applied a sizeable discount to account for these issues, the value of the Unpaid Wage Judgment would still be far greater than the relatively modest tuition debt.

### 2.    Filing of Meritless Proofs of Claim

As mentioned, no creditor filed a proof of claim in this case, and all four proofs of claim were filed by the Debtor.[8]  In addition to the SUNY Orange claim, the Debtor filed the following proofs of claim on September 4, 2024:

| Claim | Alleged Creditor | Claim Amount | Basis for Claim |
|---|---|---|---|
| 2-1 ("City Claim") | City | $14,724.34 | Fraudulent or mistaken reliance on City's strict tax foreclosure |
| 3-1 ("Cheswold Claim") | Cheswold | $1,289.90 | Fraudulent or mistaken reliance on City's strict tax foreclosure |
| 4-1 ("CTP Claim") | CTP | $18,148.67 | Fraudulent or mistaken reliance on City's strict tax foreclosure |

As set forth in the chart, the Debtor asserted in the proofs of claim that each alleged creditor was owed money because it fraudulently or mistakenly relied on the

---

[8]    11 U.S.C. § 501(c) permits the debtor to file a proof of claim on behalf of a creditor if such creditor does not file a timely proof of claim.  The debtor may file such proof of claim within 30 days after the creditor's time to file expires.  FED. R. BANKR. P. 3004(a).

City's strict tax foreclosure.[9]  This purported rationale is entirely without merit.  By September 2024 when the claims were filed, (i) the State Court had entered the Foreclosure Judgment, (ii) the referee had completed the foreclosure auction and provided CTP with a deed to the Property, and (iii) the efforts of the Chapter 7 trustee and the Debtor to reverse the Foreclosure Judgment and sale were rejected by the State Court.  Despite being unsuccessful in challenging the validity of the foreclosure, the Debtor filed the City Claim, Cheswold Claim, and CTP Claim on the faulty premise that the foreclosure was fraudulent or otherwise invalid.  In reality, (i) the Debtor no longer owed property tax to the City because the City had assigned the debt to Cheswold, (ii) the Debtor no longer owed property tax to Cheswold because Cheswold's debt was satisfied from the proceeds of the foreclosure sale, and (iii) the Debtor did not owe any amount to the successful bidder, CTP, on account of the foreclosure and sale.[10]

The Court sustained objections to each of these proofs of claim.  (*See* ECF Doc. ## 174 (order sustaining objection to Cheswold Claim), 205 (order sustaining objection to CTP Claim), 206 (order sustaining objection to City Claim).)  During oral argument on each of these matters, Debtor's counsel did not offer much in defense of the claims she filed on the Debtor's behalf.  (*See, e.g.*, *Transcript of July 8, 2025 Hearing* ("7/8/25

---

[9]     Debtor's counsel has stated on several instances her belief that the foreclosure auction took place at 2:30 <u>a.m.</u>  This assertion is false.  The State-Court-appointed referee confirmed that the auction took place on April 13, 2023 at 2:30 <u>p.m.</u>  (*See Declaration of Daniel H. Richland*, signed on July 2, 2025 (ECF Doc. # 204).)  Debtor's counsel's mistaken belief was apparently based on a scrivener's error in the referee's report, which was filed in the Foreclosure Action 2 months *after* the auction took place.  (*Id.* ¶¶ 11-13.)

[10]    Additionally, the Debtor claimed ownership over the Property in his bankruptcy schedules filed in September 2024 despite the Property having been sold, and the deed having been conveyed, to CTP.  (*See* Property Schedule at ECF p. 10 (asserting that the Debtor had "Fee Simple" ownership over the Property); Exemption Schedule at ECF p. 15 (claiming a homestead exemption over the Property); *Schedule J: Your Expenses*, docketed on Sept. 3, 2024 at ECF p. 10 (ECF Doc. # 84) (asserting that the Debtor has monthly expenses attributable to real property taxes and property insurance).)

Tr.") at 9:18-21 ("[THE COURT:] . . . I didn't see that there was a response [to the objection to the CTP Claim]. Is there an objection? MS. DWYER: I don't have one based on law, Your Honor.") (ECF Doc. # 214); *see id.* at 13:1-12 (colloquy on the objection to the City Claim); *see* 4/10/25 Tr. at 22:15-23:12 (ruling on the objection to the Cheswold Claim).)

### 3.    Ability to Pay Creditors Outside Bankruptcy

Since the conversion of the case in June 2024, the Debtor has filed four proposed Chapter 13 plans, none of which have been confirmed. (ECF Doc. ## 52, 89, 93, and 217.) The most recent *Chapter 13 Plan* was filed on September 9, 2025 ("Plan") (ECF Doc. # 217) and proposes monthly plan payments of $112.33 over 36 months, or $4,043.88 in total. (Plan, Part 2.)[11] In the Dismissal Motion, the Trustee asserted that the Plan was fully funded because the Debtor had already made payments to the Trustee totaling $1,370, and the only remaining claim to be paid is the SUNY Orange claim of $676.37. (Dismissal Motion ¶¶ 2-3.)

At the September 23, 2025 hearing, the Debtor argued that the Plan was not yet fully funded because, in addition to the SUNY Orange claim, the Plan was designed to pay unsecured claims held by Amalfia Mitchell-Mendinghall and Carla Parris, each of whom is related to the Debtor. Neither Ms. Mitchell-Mendinghall nor Ms. Parris filed a proof of claim, but their claims were included in the Debtor's *Schedule E/F: Creditors*

---

[11]    The main difference between the current Plan and prior plans is that the current Plan does not account for payment of the City Claim, Cheswold Claim, and CTP Claim, which were all disallowed. The prior plans had included such claims as priority claims.

*Who Have Unsecured Claims*, docketed on Sept. 3, 2024 (ECF Doc. # 83).[12]  According to the debtor's bankruptcy schedule, each of these individuals is owed $1,500 on account of cash loans they gave to the Debtor.  (*Id*. at ECF pp. 19-20.)

The claims of Ms. Mitchell-Mendinghall and Ms. Parris may not receive distributions under the Plan because, as a general matter, "every creditor must file a proof of claim . . . for the claim . . . to be allowed."  FED. R. BANKR. P. 3002(a); *accord Spokane Law Enf't Fed. Credit Union v. Barker* (*In re Barker*), 839 F.3d 1189, 1194 (9th Cir. 2016) ("A plain reading of the applicable statutes and rules places a burden on each Chapter 13 creditor to file a timely proof of claim.  A claim will not be allowed if this burden is not satisfied.").  Inclusion of a debt on a Chapter 13 debtor's bankruptcy schedules does not excuse the creditor from the requirement to file a timely proof of claim.  *Id*. at 1195 ("In a Chapter 13 case, a creditor must file a timely proof of claim in order to participate in the distribution of the debtor's assets, even if the debt is listed in the debtor's bankruptcy schedules."); *In re Stephanie's Too, LLC*, Case No. 18-32221 (JNP), 2020 WL 119752, at *2 (Bankr. D.N.J. Jan. 9, 2020) ("In a Chapter 7, 12, and 13 case, creditors must file a proof of claim for the claim to be deemed allowed and receive distributions.").

Because Ms. Mitchell-Mendinghall and Ms. Parris do not have allowed claims in this case, the Trustee is correct that the only remaining claim to be paid under the Plan is the SUNY Orange claim of $676.37.  Since the Debtor has made payments to the Trustee totaling $1,370, the Plan is overfunded.  In that sense, the Debtor's bankruptcy

---

[12]    Confusingly, the Debtor filed two separate schedules listing unsecured creditors on September 3, 2024.  The claims of Ms. Mitchell-Mendinghall and Ms. Parris were included in the first filing (*see* ECF Doc. # 83 at ECF pp. 19-20) but not the second filing (*see* ECF Doc. # 84 at ECF pp. 4-5).

14

serves little purpose because a dismissal would result in the return of $1,370 to the Debtor, from which the Debtor could pay the SUNY Orange claim in full. *See* 11 U.S.C. § 1326(a)(2) (providing for the return of undisbursed plan payments, after deducting unpaid administrative expense claims,[13] to the debtor upon dismissal of Chapter 13 case).

Furthermore, the Debtor is well-positioned to address claims of future creditors. As set forth above, the Debtor is owed a large amount under the Structured Settlement and may be able to monetize the Unpaid Wage Judgment. In short, the Debtor can address all of his debts outside bankruptcy.

### 4.   Improper Purpose for Bankruptcy Filing

The purpose of this bankruptcy filing has become clearer with the passage of time. No creditor filed a proof of claim by the applicable deadline, and all but one of the proofs of claim filed by the Debtor have now been expunged. Thus, the bankruptcy filing was plainly not caused by an accumulation of debts or pressure from creditors.

Having been unsuccessful in reversing the Foreclosure Judgment and sale in State Court, and facing eviction through the Eviction Action, the Debtor filed this bankruptcy to stay the eviction and collaterally attack the rulings made in the Foreclosure Action. When the Chapter 7 trustee abandoned the Property, the Debtor sought conversion of the case to Chapter 13, not to organize his debts in a Chapter 13 plan, but to re-take control of litigation in the Foreclosure Action and prosecute a motion for re-argument in that action. When the State Court rebuffed his efforts, the

---

[13]   There is no administrative expense claim for counsel fees in this case because the Debtor is represented by a not-for-profit organization.

Debtor re-asserted the same claims in the Adversary Proceeding (*i.e.*, the Constitutional Claims).

It is now clear that this bankruptcy case was never about restructuring the Debtor's debts.  Rather, the Debtor filed this bankruptcy for the purpose of collaterally attacking the Foreclosure Judgment and sale and staying the Eviction Action.

**5.  Conclusion Regarding the Debtor's Bad Faith**

The record as established over the past two years shows that this bankruptcy case was filed, and maintained, in bad faith.  The following indicia, which individually may be insufficient for a finding of bad faith, add up to bad faith when viewed in their totality:

- The Debtor is solvent;
- There is only one creditor with an allowed unsecured claim – SUNY Orange;
- SUNY Orange has not exerted any pressure on the Debtor and has not appeared in this bankruptcy case;
- No creditor filed a proof of claim;
- The Debtor filed three meritless claims – the City Claim, Cheswold Claim, and CTP Claim – to bolster the amount of debt in this case;
- The Debtor can pay the SUNY Orange claim in full, and is well-positioned to address any other claim, outside of bankruptcy; and
- The Debtor filed the bankruptcy case to stay the Eviction Action and collaterally attack the Foreclosure Judgment and sale.

Based on the foregoing, cause exists under 11 U.S.C. § 1307(c) to dismiss the case based on the Debtor's bad faith.

**C.  Retention of Jurisdiction Over Adversary Proceeding**

In the Second Circuit, the "general rule" is that "related proceedings ordinarily should be dismissed following the termination of the underlying bankruptcy case." *Porges v. Gruntal & Co., Inc.* (*In re Porges*), 44 F.3d 159, 162 (2d Cir. 1995).  However,

16

nothing in the Bankruptcy Code requires a bankruptcy court to dismiss related proceedings automatically following the termination of the underlying case. *Id.* (collecting cases). Therefore, dismissal of an underlying bankruptcy case does not automatically strip the bankruptcy court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. *Id.* Courts must consider four factors when determining whether to continue to exercise jurisdiction: judicial economy, convenience to the parties, fairness, and comity. *Id.* at 163.

Here, the *Porges* factors support retention of jurisdiction over the Adversary Proceeding. The parties have fully briefed and argued CTP's motion to dismiss the Second Amended Complaint before this Court. Further, the Debtor has appealed the Order Dismissing Amended Complaint, and CTP's motion to dismiss the District Court Appeal remains *sub judice* in the District Court. The Court will retain jurisdiction over the Adversary Proceeding until these matters are resolved.

## CONCLUSION

For the reasons stated, the Dismissal Motion is GRANTED, and this bankruptcy case is DISMISSED. However, the Court will leave open, and retain jurisdiction over, the Adversary Proceeding. The Trustee shall upload a proposed order consistent with this Memorandum Decision via eOrders.

/s/ Kyu Y. Paek



**Dated: March 24, 2026**
**Poughkeepsie, New York**

_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**